UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No  HG 07-09179

LARRY D. ERICKSON, JR  and
CINDY L. ERICKSON,

Debtors.

_____/

## OPINION RE: TRUSTEE'S MAY 19, 2008 OBJECTION
## TO DEBTORS' EXEMPTIONS

Appearances:

Jeff A. Moyer, Esq., Grandville, Michigan, Chapter 7 Trustee
Roger G  Cotner, Esq., Grand Haven, Michigan, attorney for Debtors

Jeff A. Moyer ("Trustee") has objected to the Section 522(d)(5)[1] exemption claimed by Larry

and Cindy Erickson (the "Ericksons") in the 2006 and 2007 refunds they received from various

taxing authorities.  Trustee's objection is sustained.

## PROCEDURAL BACKGROUND

When the Ericksons filed their Chapter 7 case on December 10, 2007, they indicated in their

schedules that they were not owed any tax refunds for previous years and that they did not expect

to receive a refund for the current year.  However, five months later the Ericksons amended their

schedules to include 2006 and 2007 tax refunds totaling $13,810.  They also amended their Schedule

C at that time to add the now disclosed refunds to the property they claimed as exempt.

---

[1] 11 U.S C § 522(d)(5)  Unless otherwise designated, all further references to "Section ____" shall
be to the Bankruptcy Code as currently amended.  11 U S C §§ 101, et seq.

Trustee had not raised an objection up to that point  However, the Ericksons' May 16, 2008 amendment prompted a response.  Originally, Trustee objected on the theory that the Ericksons were time-barred as a matter of law from claiming any exemption in the tax refunds because they had not disclosed them at the outset of their case.  However, that theory was rejected at a prior hearing.[2]  Consequently, Trustee has since proceeded against the Ericksons based upon the alternate theory that their exemption of the refunds should at least be partially disallowed because it exceeded the maximum amount permitted under the applicable statute[3]

An evidentiary hearing was then held  Larry Erickson was the only witness and the Ericksons' original and amended Schedules B and C were the only exhibits offered.[4]

## FACTS

Although the Ericksons did not initially claim their 2006 and 2007 tax refunds as exempt, they did claim exemptions in other items of the estate's property.  Specifically, the Ericksons claimed

---

[2]Trustee had also posited a similar theory in ten other cases where the debtors had belatedly claimed exemptions in their tax refunds  This court heard all of those objections together and then disposed of them in a single written opinion  See, In re Thomasma, 399 B R  20 (Bankr  W.D. Mich. 2008).

[3]Trustee also had the option under the Thomasma decision to contend that the Ericksons' delay in claiming their tax refunds as exempt was in bad faith and in fact Trustee did attempt at the February 10, 2009 evidentiary hearing to offer proofs that the Ericksons had acted in bad faith  However, the scheduling order that had been previously issued did not include bad faith as a triable issue  Consequently, the court did not permit Trustee to offer those proofs

The specific reasons for that ruling are set forth in the record  However, the court does supplement the record at this time to further clarify that the status conference held on December 4, 2008 was ordered pursuant to 11 U.S C  § 105 and FED.R BANKR.P  9014(a) and that the scheduling order issued as a consequence of that status conference was issued pursuant to FED R.BANKR P  7016 and FED R CIV P  16(c) and (d).

[4]Jurisdiction to hear this matter is based upon 28 U.S.C. § 1334(b) and W.D. Mich. L Civ R. 83.2. This is also a core proceeding under 28 U S.C  § 157(b)(2)(B) and, therefore, the order to be entered in conjunction with this opinion is a final order that is appealable pursuant to 11 U S.C. § 158.

The balance of this opinion represents this court's specific findings of fact and its separate conclusions of law as required by FED.R BANKR P. 9014 and 7052 and FED R CIV.P 52(a)(1)

Section 522(d)(5) exemptions in cash and bank accounts and in a vacant parcel of land in Tawas Township, Michigan (the "Tawas property")[5] According to Mr. Erickson, the Tawas property is unencumbered.

The Ericksons' original Schedule C itself discloses these claimed exemptions as follows:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemptions |
|---|---|---|---|
| SCHEDULE A - REAL PROPERTY<br>Parcel 4 Part of SE 1/4 of SE 1/4 Section 18, T22N, R7E, Tawas Township | 11 USC § 522(d)(5)[6] | 12,500 00 | 12,500 00 |
| SCHEDULE B - PERSONAL PROPERTY | | | |
| Cash on hand | 11 USC § 522(d)(5) | 55 00 | 55.00 |
| Lake Michigan CU - checking | 11 USC § 522(d)(5) | 107 00 | 107.00 |
| Northland Federal CU | 11 USC § 522(d)(5) | 75 00 | 75.00 |

Equating the value of the Tawas property with the exemption claimed suggests on its own that the Ericksons wanted to actually keep it as a so-called "in-kind" exemption[7] Moreover, Mr Erickson himself confirmed at the ensuing evidentiary hearing that his intention at the outset of the case was in fact to keep the property But Mr. Erickson also testified that he and his wife had had

---

[5]The Ericksons in fact owned only an undivided one-half interest in the Tawas property with the other one-half being owned by another couple Nonetheless, the court will refer to the Ericksons' one-half interest as the "Tawas property "

[6]Section 522(d)(5) is often referred to as the "catch all" or "wild card" exemption. It permits the debtor to exempt from the estate anything the debtor might choose provided that the aggregate value of the property chosen does not exceed a specified amount At present, the maximum amount can be as much as $11,200.

[7]That is, the Ericksons wanted the Tawas property actually returned to them as opposed to having it sold and receiving the proceeds instead.

3

a change of heart sometime after they had attended the meeting of creditors on January 15, 2008 [8] What had prompted this change was their discovery that the 2006 and 2007 tax refunds would be much larger than what they had originally anticipated. When exactly after the January 15, 2008 meeting the Ericksons learned of their good fortune is unknown However, it is clear that the Ericksons did not attempt to include the tax refunds among the assets they claimed as Section 522(d)(5) exemptions until they filed their amended Schedule C on May 16, 2008.

The monetary limit imposed by Section 522(d)(5), though, precluded the Ericksons from simply adding these refunds to the Section 522(d)(5) exemptions they had already taken in the cash, the bank accounts, and the Tawas property Specifically, the $13,810 tax refund, when combined with the values of this other property, totaled $26,547 and Section 522(d)(5) permitted the Ericksons a maximum of only $22,400.

The Ericksons' solution was to reduce the amount they had claimed as their Section 522(d)(5) exemption in the Tawas property from $12,500 to $5,853. In other words, when the Ericksons filed their amended Schedule C on May 16, 2008, their plan was 1) to still use $237 of their available Section 522(d)(5) exemption to keep the cash and bank accounts they had originally reported; and 2) to use another $13,810 of the available exemption to keep all of the 2006 and 2007 tax refunds that they were then disclosing for the first time; but 3) to now abandon what they had previously intended to be an "in-kind" exemption of the entire interest in the Tawas property and instead accept

---

[8]Section 343 requires the debtor to attend a scheduled meeting of creditors See also, 11 U S C § 341. When this meeting was held is important because a party is left with only thirty days from the conclusion of that meeting to object to any exemption claimed unless the court grants an extension FED R BANKR P 4003(b).

4

simply the balance of their available Section 522(d)(5) exemption, that being $5,853, from whatever

Trustee himself might realize as proceeds from the sale of the same.[9]

Trustee, though, contends that the Tawas property had been already removed from the estate

as a $12,500 exemption and, therefore, that the remaining Section 522(d)(5) exemption is not enough

to cover the entire tax refund. Trustee asserts instead that the Ericksons can keep only $9,113 of the

refund and that the remainder must be turned over for distribution to their creditors.[10]

## ISSUE

May the Ericksons claim a Section 522(d)(5) exemption in the entire $13,810 of tax refunds

now included in their amended Schedule C?

## DISCUSSION

If, as Trustee contends, the estate's interest in the Tawas property was removed by the

Ericksons' unopposed exemption of the same in their original Schedule C, then it follows that the

Ericksons could not later unwind what has already been done. Certainly, the Ericksons had the right

---

[9]Indeed, it is quite possible that the Ericksons' revised exemption strategy included the assumption that Trustee would be unable to sell their undivided interest in the Tawas property and that, as a consequence, they would recover that property in any event upon the close of the case  See, 11 U.S.C. § 554(c).

[10]The Ericksons' selection of $5,853 as the amount of their amended Section 522(d)(5) exemption in the vacant lot is puzzling given the total Section 522(d)(5) exemptions claimed in the cash, bank accounts, vacant land and tax refunds as amended adds up to only $19,900 instead of the $22,400 maximum actually allowed   Part of the discrepancy is explained by the Ericksons' decision to redesignate as a Section 522(d)(5) exemption in their amended Schedule C $550 of the $3,500 they had originally claimed as a Section 522(d)(2) exemption in a Ford Econoline van. As for the balance, it appears that the Ericksons were under the mistaken impression at the time they proposed their May 16, 2008 amendment that the maximum Section 522(d)(5) exemption available to them was only $20,450 when in fact the maximum had been increased to $22,400 effective April 1, 2007

The $9,113 that the court has calculated as the amount the Ericksons can keep assumes that the Ericksons' will continue to take a $500 Section 522(d)(5) exemption in the van and that the Ericksons will commit the remainder of the available Section 522(d)(5) exemption, that being $9,113, to keeping as much of their 2006 and 2007 tax refunds as they can.

to amend their Schedule C however they wished. FED.R.BANKR.P. 1009(a) Such an amendment, though, is meaningless if the subject property has already been removed from the estate, for the Bankruptcy Code provides no mechanism for a debtor to return already exempted property to the bankruptcy estate short of the trustee's agreement to accept it again, which is clearly not the case in this instance. Simply said, the Ericksons cannot, to use their own metaphor, "put the toothpaste back into the tube." *See also, In re Brown*, 375 B.R. 362, 376-78 (Bankr. W.D. Mich 2007).[11]

The question, then, turns on whether the Ericksons did in fact remove the Tawas property from the bankruptcy estate when, at the outset of their case, they claimed it as exempt without Trustee's objection A considerable amount of controversy has erupted in this district, as well as in others, as to whether a debtor may take a so-called "in-kind" exemption of property from the estate and, if so, how is such an exemption accomplished. What often sets off the controversy is a dispute between the debtor and the trustee as to whether the trustee may still sell property on behalf of the estate that the debtor claims is no longer the trustee's to sell because of his already allowed exemption of the same. The instant case, of course, is different, for here it is the Ericksons who are asserting that the previously exempted property is still part of the bankruptcy estate whereas it is Trustee who is asserting that the subject property has been removed and now belongs to the Ericksons. The issues, though, are still the same. Therefore, it is appropriate to consider once again the various approaches the courts have taken *See, In re Cormier*, 382 B.R. 377 (Bankr. W.D. Mich.

---

[11]An alternative theory that Trustee might have advanced is laches *See, e.g., In re Daniels*, 270 B.R. 417, 425-29 (Bankr. E D Mich. 2001) However, there is no evidence that Trustee has been prejudiced by the Ericksons' subsequent change of mind concerning their exemptions. In any event, Trustee has not raised this argument nor is it necessary given this court's conclusion that a debtor cannot in any event force the return of property to the bankruptcy estate once it has been removed.

6

2008),[12] *Klein v. Chappell (In re Chappell)*, 373 B.R. 73 (9th Cir BAP 2007),[13] and *In re Anderson* (6th Cir. BAP 2007).[14]

## A.    *Cormier*

*Cormier* most favors the Ericksons' position, for it holds that Section 522(d)(5) permits no "in-kind" exemption at all

> Based upon the explicit statutory language and the melange of interpretation principles, this court believes that § 522(d)(5) does not contemplate any "in-kind" exemption.

382 B.R. at 394

However, with all due respect, *Cormier*'s conclusion is based more upon a variation of Aristotlean logic than statutory construction. That is, *Cormier* creates categories and then makes deductions from their comparison. Here is *Cormier*'s reasoning:

> To discern the importance of § 522(d)(5), it is worthwhile to quickly review § 522(d) in its entirety. Of its twelve subsections, only eight have a reference to a maximum monetary amount The four other subsections have no monetary limitation. The exemptions without the

---

[12]*See, also, Lewandowski v. Lim (In re Lewandowski)*, 386 B R  643, 647-48 (E.D. Mich. 2008) and *In re Powell*, 399 B.R. 190, 195 (Bankr. W D. Tex. 2008)

[13]*See also, Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir. 2008)  Although *Barroso-Herrans* did not cite *Chappell*, it at least incorporated some of the reasoning employed in *Chappell*  This court has chosen to address *Chappell* as opposed to *Barroso-Herrans* because *Chappell* offers a broader spectrum of arguments for the result that both *Barroso-Herrans* and it ultimately reached.

[14]The *Anderson* BAP's opinion was prompted by an appeal of this court's own decision concerning this controversy, *In re Anderson*, 357 B.R. 452 (Bankr. W.D Mich 2006)  Although the *Anderson* BAP criticized this court for its separate conclusion concerning the approval of settlements under Bankruptcy Rule 9019(a), the *Anderson* BAP did affirm this court's decision concerning the nature of the exemption the debtors had taken in that instance.

The *Anderson* BAP's decision has also been adopted in *In re Reilly*, 534 F 3d 173, 180 (3rd Cir 2008) ("*Anderson* provides the closest analog to the case before us.")  The Supreme Court recently certified *Reilly* for review  *Schwab v. Reilly*, _____ S.Ct. _____, 2009 WL 1007924.

monetary limitations might appropriately be described as "in-kind" exemptions. For purposes of construing § 522(d)(5), the comparison demonstrates that Congress treated different exemption subsections in different ways. . . . The language of § 522(d)(5), contrasted with the "in-kind" exemption subsections, encourages a reader to conclude that a difference must exist-the maximum stated amount must mean *something*. As noted above, the statute says *nothing* about a debtor's scheduled value begetting an unassailable in-kind exemption.

*Id.* at 393-94 (footnotes omitted).

But *Cormier* further observes that a statute's "object and policy" is also relevant to its interpretation *Id* at 395 (quoting from *Grogan v. Garner*, 498 U.S. 279, 288, 111 S.Ct. 654, 660, n 13) [15] It is appropriate, then, to ask how well its logic stands up to this standard. Consider, for example, the instant case. The Ericksons, at least at the outset of their case, had without question intended to remove the Tawas property itself from the estate as an in-kind Section 522(d)(5) exemption. Moreover, Trustee had no objection whatsoever to their plan Yet *Cormier* instructs that the Tawas property must still remain within the bankruptcy estate. In fact, it would appear that the only way under *Cormier* that the Ericksons could have ever recovered the Tawas property from the estate prior to close would have been through abandonment under Section 554(a) or (b). [16]

Moreover, *Cormier*'s prohibition would affect more than the Ericksons' exemption of this property, for it is fair to infer that the Ericksons intended their Section 522(d)(5) exemption of the

---

[15] *See also, Cormier*, 382 B.R. at 392

[16] If exempt property cannot be removed from the estate as an in-kind exemption under Section 522(l). it must ultimately be returned to the debtor somehow. The logical alternative, of course, is abandonment either upon close of the case by operation of Section 554(c) or at an earlier time by operation of Section 554(a) or (b). Indeed, the cases that resist the notion of in-kind exemptions often arise when the debtor later attempts to compel the trustee's abandonment of the subject property under Section 554(b). *See, e.g., In re Heflin*, 215 B.R. 530 (Bankr. W.D. Mich. 1997) and *In re Bregni*, 215 B.R. 850 (Bankr. E.D. Mich. 1997).

cash and bank accounts to be also in-kind.[17]   Indeed, *Cormier*'s prohibition against in-kind exemptions would apparently impair several of the other exemptions the Ericksons have claimed, for the court in *Cormier* states later in its opinion that "[o]nly in those subsections [of Section 522(d)] that lack a maximum amount does the statute contemplate an 'in-kind' or full exemption." *Cormier*, 382 B.R. at 395.  As an example, all of the household goods and wearing apparel the Ericksons had claimed as a Section 522(d)(3) exemption[18] would, according to *Cormier*, still remain as the estate's property notwithstanding the Ericksons' evident and unopposed intention to remove these incidental items from the estate as their exempt property.

Is this, though, what Congress envisioned when it enacted Section 522?  Remember, exempt property never even became part of the estate under the Bankruptcy Act.  *Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985); *See also,* 5 *Collier on Bankruptcy*, ¶ 541.LH [1] - [3] (15th Ed. rev. 2005).  As such, debtors under that former regimen retained unfettered enjoyment of whatever they claimed as exempt until the court, at the trustee's insistence, determined otherwise.

As for the Bankruptcy Code itself, nothing there suggests that Congress has jettisoned the long accepted notion that a debtor's "fresh start" is realized in part through his ability to enjoy without further restraint what he has successfully claimed as his exempt property.  Nor is there any

---

[17]As already noted, the scheduled values of all three of these assets, which is only $237, is also equal to the amount of the Section 522(d)(5) exemptions claimed in the same   Trustee did not object to these exemptions when the Ericksons claimed them in their original Schedule C or when they claimed them again in their amended Schedule C.

[18]The Ericksons claimed a $5,500 Section 522(d)(3) exemption in their household goods and wearing apparel which they also valued at $5,500   The $5,500 exemption is well below the combined $21,550 maximum the Ericksons are permitted under that subsection.

9

indication that his recovery of that property is to take place through any means other than the

exemption process now provided under Section 522. The Supreme Court itself has described that

process as follows:

> An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions. **An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.** Section 522 determines what property a debtor may exempt.

*Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835 (1991) (emphasis added).[19]

Moreover, the Court thereafter recognized in *Taylor v. Freeland & Kronz* that it is Section

522(*l*) that in fact accomplishes the removal of the exempted asset from the estate. 503 U.S. 638,

112 S.Ct. 1644 (1992).[20] Section 522(*l*) provides that:

---

[19]*See also, Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir 2008) ("Absent objection to a claimed exemption . , the property claimed as exempt belongs to the debtor and not the estate-even if the exemption is improper "); *Bell v Bell (In re Bell)*, 225 F.3d 203, 215-16 (2nd Cir. 2000) (compiling cases and then concluding with "[q]uite simply, property that has been exempted belongs to the debtor."); *In re Reilly*, 534 F.3d 173, 180 (3rd Cir 2008), *Matter of Sherk*, 918 F.2d 1170, 1174 (5th Cir. 1990) ("When a claimed exemption is upheld by the bankruptcy court, it is no longer property of the estate.") (citations omitted), abrogated on other grounds, *Taylor v Freeland & Kronz*, 50 U.S. 638, 112 S.Ct 1644 (1992), *Matter of Yonikus*, 996 F.2d 866, 870 (7th Cir 1993) ("[T]he Bankruptcy Code permits a debtor to remove from the estate whatever property is deemed exempt from execution under either state or federal law."), *Abramovitz v. Palmer*, 999 F.2d 1274, 1276-77 (8th Cir. 1993), *Seror v. Kahan (In re Kahan)*, 28 F.3d 79, 81 (9th Cir 1994) ("The bankruptcy estate includes all of the debtor's interests in property at the commencement of the case, except property that the debtor elects to exempt based on applicable federal or state law."), *In re Scrivner*, 535 F.3d 1258, 1264 (10th Cir. 2008) ("Generally, if the debtor claims property as exempt and "a party in interest" does not object, that property is exempt from property of the estate "); *Gamble v. Brown (In re Gamble)*, 168 F.3d 442, 444 (11th Cir. 1999) ("Once the property is removed from the estate [through exemption], the debtor may use it as his own."), citing *Hall v. Finance One of Georgia, Inc (In re Hall)*, 752 F.2d 582, 584 (11th Cir 1985), *In re Gagnard*, 17 B.R. 811, 813 (Bankr. D La 1982), *In re Fishman*, 241 B.R. 568, 574 (Bankr N.D. Ill. 1999), *Braunstein v. Leung (In re Leung)*, 385 B.R. 489, 494 (Bankr. D Mass. 2008); *In re Stinson*, 221 B.R. 726, 729 (Bankr E.D. Mich 1998)

[20]This court disagrees with *Cormier*'s contention that the Supreme Court in *Taylor* "was not called upon to interpret the exemption statute, including § 522(d), nor did it even discuss it, except perhaps in

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. **Unless a party in interest objects, the property claimed as exempt on such list is exempt.**

(emphasis added).

The difficulty with *Cormier* is that it prevents Section 522(*l*) from serving as an efficient vehicle to quickly remove from the bankruptcy estate the numerous personal effects that a debtor would typically wish to exempt under Section 522(d). Put differently, a debtor cannot, according to *Cormier*, remove from the bankruptcy estate his home and its furnishings, or even the clothes he wears, by simply taking an unchallenged Section 522(d) exemption in the same. Instead, *Cormier*

---

passing." 382 B.R. at 391. *Cormier*, of course, is correct that *Taylor* did not discuss what property may be exempted under that section or "*how* a debtor may claim an 'in-kind' exemption to assert the entire property as exempt." *Id.* (emphasis in original) However, *Taylor* most certainly did address Section 522, for the opinion begins with this statement.

> Section 522(*l*) of the Bankruptcy Code requires a debtor to file a list of the property that the debtor claims as statutorily exempt from distribution to creditors. Federal Rule of Bankruptcy Procedure 4003 affords creditors and the bankruptcy trustee 30 days to object to claimed exemptions. We must decide in this case whether the trustee may contest the validity of an exemption after the 30-day period if the debtor had no colorable basis for claiming the exemption

112 S.Ct. at 1646.

Indeed, the issue in *Taylor* that prompted the trustee's appeal to the Supreme Court was whether the debtor's law firm, Freeland & Kronz, had received an avoidable post-petition transfer under Section 549 when it accepted from debtor its share of the settlement proceeds that debtor had previously claimed as exempt. *See, Taylor v. Freeland & Kronz (In re Davis)*, 105 B.R. 288 (Bankr. W.D. Pa 1989) What the Third Circuit had held on appeal was that the settlement proceeds were no longer property of the estate by operation of an unopposed exemption under Section 522(*l*), *See, Taylor v. Freeland & Kronz*, 938 F 2d 420, 422 (3rd Cir 1991), and it was this decision that the Supreme Court then affirmed. 112 S.Ct at 1648 ("Section 522(*l*) therefore has made the property exempt ")

11

mandates that all of these items remain indefinitely as the estate's property and, as such, subject to the trustee's continued administration.

Granted, *Cormier* offers abandonment under Section 554 as a way for the debtor to still recover his property from the estate. However, an abandonment at the minimum would require the debtor to incur additional time and expense. Nor is an abandonment guaranteed, since a trustee can always choose to be uncooperative and, as the Sixth Circuit has held, a compelled abandonment under Section 554(b) is "the exception, not the rule." *Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987).

Of course, these problems could be simply part and parcel of what a debtor must endure whenever bankruptcy relief is sought. However, there still remains the question of whether it would be prudent for the trustee himself to allow otherwise exempted assets to remain indefinitely as the estate's property until, by chance, the debtor got around to seeking their abandonment. For example, should not the trustee in this instance be concerned about the estate's continuing liability to third persons who might be injured on the Tawas property if, as *Cormier* holds, the Ericksons' intended in-kind exemption of that property failed to actually remove it from the estate?[21] And should there not be equal concern about the estate's exposure under Michigan's owner liability statute for the Ericksons' ongoing use of the exempted Taurus and Econoline van if, as *Cormier* suggests, the

_____

[21]Many courts, including the Sixth Circuit, have added to the "actual" and "necessary" requirements for the allowance of a Section 503(b)(1)(A) administrative claim the additional requirement that the expense must have also benefitted the estate. *See, e.g., Employee Transfer Corp v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987). However, even with this gloss there remains an exception for tort claims against the estate based upon the premise that fairness requires all claimants against the estate to be treated equally as opposed to only those who provide appreciable benefit to it. *Reading Co v. Brown*, 391 U S 471, 477-78, 88 S.Ct. 1759, 1763 (1968); *see also, Matter of Al Copeland Enterprises, Inc v. State of Texas (Matter of Al Copeland Enterprises, Inc)*, 991 F.2d 233, 239 (5th Cir. 1993) ("The Court's opinion in *Reading* survived Congress' revisions to the Bankruptcy Code "); and *In re Execuair Corp.*, 125 B R 600, 602-3 (Bankr. C D Cal 1991)

12

vehicles continued to be owned by the estate notwithstanding the Ericksons' uncontested Section 522(d)(3) exemption of the same.[22]

A trustee, of course, could rid himself of these risks by taking the initiative to abandon these items under Section 554(a). But the cost associated with noticing abandonments[23] of already exempted property in case after case does beg the question of why such a procedure should even be necessary. After all, Section 522(*l*) stands ready to otherwise remove the exempted property without anything more were it not for *Cormier*'s absolute prohibition of in-kind exemptions under most of Section 522(d)'s subsections. Therefore, there is certainly reason to challenge *Cormier*'s assertion that the conclusion it has reached is consistent with the "object and policy" of the Bankruptcy Code. 382 B.R. at 395.

Policy concerns, though, are not enough, for among the many rules of statutory construction is one rule that prevails over all others - that a court's inquiry regarding a statute's meaning must end with the plain language of the statute itself. *See, e.g., Lamie v United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004); *In re Toti*, 24 F.3d 806 (6th Cir. 1994). Therefore, *Cormier* should still be followed if the requisite statutory support is there. But it is the very language of Section 522(d)(5) and similar subsections that actually undercuts the logic *Cormier* has employed.

Again, *Cormier* rests upon the distinction it draws between the many Section 522(d) exemptions that are limited to a specific dollar amount and the few remaining subsections of Section

---

[22]The owner of a motor vehicle is liable for another's negligent operation of the same so long as its use is with the owner's knowledge or consent, whether express or implied MICH COMP. LAWS § 257.401(1).

[23]An abandonment must be noticed to the creditor matrix unless the court directs otherwise. FED R BANKR.P 6007(a)

522(d) where no limit is imposed. There is no doubt, as *Cormier* insists, that the maximums set forth in Section 522(d)(5) and similar subsections "must mean something." *Id.* at 394. However, *Cormier* seems to overlook other language in these same subsections. Should not, for example, the reference to "interest" in all but one of these subsections[24] mean something too, for "[i]t is a 'settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect.'" *Cormier* at 393 (quoting from *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1015 (1992)).

The Bankruptcy Code does not include "interest" as a defined term. However, "interest" does appear prominently in Section 541(a)'s description of what constitutes the very property from

---

[24]      (d) The following property may be exempted under subsection (b)(2) of this section.

(1) The debtor's aggregate **interest**, not to exceed $20,200 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence. ...

(2) The debtor's **interest** not to exceed $3,225 in value, in one motor vehicle

(3) The debtor's **interest**, not to exceed $525 in value in any particular item or $10,775 in aggregate value, in household furnishings. ..

(4) The debtor's aggregate **interest**, not to exceed $1,350 in value, in jewelry ...

(5) The debtor's aggregate **interest** in any property, not to exceed in value $1,075 plus up to $10,125 of any unused amount of the exemption provided under paragraph (1) of this subsection

(6) The debtor's aggregate **interest**, not to exceed $2,025 in value, in any implements, ...


.

(8) The debtor's aggregate **interest**, not to exceed in value $10,775, ...., in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract . .

11 U S C  § 522(d)(1) - (6) and (8) (emphasis added).

14

which the Section 522(d) exemptions are to be taken.[25] Specifically, Section 541(a)(1) provides that the estate is to include "all legal or equitable **interests** of the debtor in property as of the commencement of the case" (emphasis added). There is also no question that "interests" refers to the property itself, as opposed to only its value, as exemplified by the turnover provisions of Section 542. *See also*, 11 U.S.C. § 541(c) ("[a]n interest of the debtor in property becomes property of the estate under subsection (a)(1), . . of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law."). *In re Graham Square, Inc.*, 126 F.3d 823, 831 (6th Cir. 1997) ("The scope of section 541(a)(1) . . allows the bankruptcy 'trustee to **regain possession of property** in which the debtor had equitable as well as legal title '" (emphasis added).

But if an "interest" for purposes of creating the bankruptcy estate is to be in-kind, if you will, does it not follow that "interest" is to have the same meaning when the debtor is choosing from that very same estate the property he wishes to exempt? After all, another time-honored rule of statutory construction is that equivalent words are presumed to have the equivalent meaning when repeated in the same statute. *Cohen v. de la Cruz*, 523 U.S 213, 220, 118 S.Ct. 1212, 1217 (1998). *See also*, *Ratzlaf v. U.S.*, 510 U.S. 135, 143, 114 S.Ct. 655, 660 (1994), *Sullivan v. Stroop*, 496 U.S 478, 484, 110 S.Ct. 2499, 2504 (1990), *Sorenson v Secretary of Treasury*, 475 U.S 851, 860, 106 S.Ct. 1600, 1606 (1986).

---

[25]     Notwithstanding section 541 of this title, an individual debtor **may exempt** *from* **property of the estate** the property listed in either paragraph (2) [i e., the Section 522(d) exemptions] or, in the alternative, paragraph 3 of this subsection [i e, the applicable state and non-bankruptcy federal exemptions].

11 U S.C. § 522(b)(1) (emphasis added).

*Cormier*, of course, relies upon the maximum monetary amounts that limit Section 522(d)(5) and other subsections to justify the different meaning it wants to give to "interest" as it appears therein. 382 B.R. at 393-94. But *Cormier* reads these monetary limits too broadly. Granted, the $11,200 limit placed upon the so-called catch-all exemption permitted under Section 522(d)(5) impedes the debtor from removing actual interests from the estate as his allowed exemption when the aggregate value of the claimed interests exceeds the prescribed amount. If, though, the aggregate value of the claimed interest is less, then it certainly seems that the same interests that became the estate's property at the outset of the case by operation of Section 541(a)(1) should then be capable of being removed from the estate as well by operation of Sections 522(d)(5) and 522(*l*). Therefore, with all due respect to *Cormier*'s reasoning, Section 522(d)(5) can permit in-kind exemptions without rendering meaningless the monetary limit that that subsection also imposes.[26]

Nor does the recognition of in-kind exemptions under all of the Section 522(d) exemptions (as opposed to *Cormier*'s few) conflict with the plain meaning of the statutory language used. The language of, for instance, Section 523(d)(2) is certainly clear enough  If the estate includes the

---

[26]Of course, *Cormier*'s hesitation with allowing in-kind exemptions is not with the debtor's removal of exempt property whose value **is less than** the maximum allowed but with the debtor's removal of exempt property whose value **is greater than** the maximum allowed  But neither Section 522(d)(5) nor any of the other federal exemptions with value limitations provides a mechanism other than the objection process itself for permitting the former but prohibiting the latter. Consequently, these sections must be read to permit in-kind exemptions without exception. Otherwise, debtors would never be able to remove eligible property from the estate as clearly contemplated under Section 522(d)  Indeed, it is not fair to even assume that the debtor has cheated the estate should it later turn out that he had understated the exempted asset's actual value. After all, parties may differ in their opinions as to value so long as they have acted in good faith.

As for those debtors who do choose to cheat, the estate's protection lies not in Section 522(d), but rather with the trustee's and other parties' vigilance  Put simply, a debtor can remove from the estate more than he is allowed under Section 522(d) unless the trustee or another party objects  Lest there by any doubt, consider *Taylor* more closely, for all of the parties in *Taylor* agreed that the settlement proceeds the debtor there was able to keep as her exemption far exceeded anything that was allowed under either Section 522(d) or applicable state exemption laws. *Taylor*, 112 S.Ct. at 1647

16

debtor's car, he can actually remove it from the estate as an exemption provided that its value, net of liens, does not exceed $3,225. On the other hand, if the car's net value exceeds that amount, it cannot be removed. Indeed, there is nothing remarkable about either of these outcomes, for it is certainly sensible that a debtor should be able to drive away his Chevette, but not his Corvette.[27]

And finally, this court sees no reason to distinguish, for example, Section 522(d)(2) from Section 522(d)(5) because the latter speaks of an "aggregate interest" as opposed to just an "interest." "Aggregate" in this context simply means "collective." *See,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986). In other words, the addition of "aggregate" to Section 522(d)(5) and other similar subsections[28] represents nothing more than the recognition that a debtor may remove under those subsections more than one interest, whether it be assorted pots and pans under Section 522(d)(3) or bric-a-brac under Section 522(d)(5), so long as the collective values of those interests do not exceed the specified monetary limit.[29]

---

[27]In fact, Section 522(d)(2) could be read to permit the removal of the Chevette but not $3,225 of the proceeds realized from the trustee's ultimate disposition of the Corvette. Put differently, Section 522(d)(2) and the other pertinent exemption provisions of that subsection address only the exemption of interests, not proceeds. However, this court does not believe that the language used in Section 522(d) is so inflexible that the debtor cannot elect instead to receive the proceeds realized from the identified property, especially in those instances where a value limitation would prohibit a particular in-kind exemption from being taken. Rather, this court finds sufficient leeway within Section 522(d) to permit the debtor's share of the proceeds being treated as in fact the exempted interest.

[28]11 U S C §§ 522(d)(1), (3), (4), (6), and (8)

[29]*Cormier* correctly points out that it is through a Chapter 13 that a debtor can keep most, if not all, of his pre-petition property and that a Chapter 7 proceeding, in contrast, contemplates the liquidation of the debtor's assets for the benefit of his creditors. *Cormier,* 382 B.R. at 396-97. However, this distinction does not warrant the further conclusion that *Cormier* also wants to make - that a debtor is not allowed in a Chapter 7 to remove from the estate his belongings as in-kind exemptions but that he must instead leave them for further administration like everything else. Granted, Section 704(a)(1) charges the Chapter 7 trustee with the duty to "collect and reduce to money the property of the estate. . . ." However, nothing therein suggests that the property that the debtor wishes to keep in-kind as his exemptions should not be removed first.

*Cormier* also warns that "[c]onstruing chapter 7 to permit a debtor to retain property in excess of the maximum amount permitted by § 522(d)(5) turns the Bankruptcy Code upside down." *Id* at 397. However,

17

Therefore, for the reasons stated, this court respectfully disagrees with *Cormier* that the Ericksons in this instance were incapable of removing the Tawas property itself from the estate when they claimed that interest as a Section 522(d)(5) exemption in their original Schedule C. Section 522(d)(5) clearly permitted them to claim their exemption in-kind, since the uncontroverted value of the Tawas property, when combined with the value of the other Section 522(d)(5) exemptions originally claimed, was well within the maximum permitted under that subsection.[30]

---

*Anderson* mandates no such construction. It simply recognizes that Section 522(d) permits in-kind exemptions and, as such, a Chapter 7 trustee must be appropriately vigilant to prevent a debtor from taking advantage of the same, especially in light of *Taylor*.

This is not to say that there is no merit to *Cormier*'s fear of "some debtors figuratively and fortuitously sliding down a rainbow to be gifted a pot of unwarranted bankruptcy largesse." *Id* at 380. But, the risk posed is neither new nor unusual Rather, it is the same risk that presents itself whenever a system that is susceptible to debtor fraud depends for its protection upon the trustee's oversight Indeed, all that *Taylor* does is underscore even more the inherent risks involved

And finally, *Cormier* warns that *Anderson* "may result in thousands of otherwise unnecessary objections to exemptions. 382 B R. at 398 n. 31 Perhaps. However, this court has not perceived any noticeable increase in objections in the cases it has been assigned even though *Anderson* is now more than two years old It appears that trustees at most are now being more diligent in assessing whether there is non-exempt value in assets that the debtor has claimed as fully exempt. But, as *Taylor* points out, diligence is what the Rule 4003(b) deadline is supposed to encourage.

[30]As already noted, the district court in *In re Lewandowski.* 386 B.R. 643, 646-48 (E D. Mich. 2008) found *Cormier* compelling when it too concluded that Section 522(d)(5) does not allow for in-kind exemptions. However, *Lewandowski* also relied upon a case from its own district, *In re Gaylor*

> "Courts have . consistently held that the debtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt "

*Id* at 647-48 (quoting *In re Gaylor.* 123 B.R 236, 239 (Bankr E.D Mich. 1991)).

But, as the court in *Gaylor* itself acknowledged, the issue was anything but well settled when it issued its opinion Indeed, in making its decision, the bankruptcy court in *Gaylor* chose to disregard a contrary decision by another district judge from that same district. *See, Seifert v Selby,* 125 B.R. 174 (E.D. Mich 1989)

Moreover, *Lewandowski* missed the fact that *Gaylor* preceded *Taylor v Freeland & Kronz* which, if anything, affirmed *Seifert* and rejected *Gaylor* Granted, the debate continues after *Taylor* as to whether its holding applies to attempted in-kind exemptions under the federal scheme However, *Gaylor* certainly is not, as *Lewandowski* seems to suggest, well settled law even in the Eastern District of Michigan

18

**B.**   *Chappell*

*Chappell*,[31] unlike *Cormier*, does not categorically prohibit a debtor's ability under Section 522(d)(5) or other similar subsections to claim the exempted property in-kind.  However, *Chappell* still favors the Ericksons' position because it permits such an in-kind exemption only in those instances where the debtor's Schedule C itself manifests that intention.[32]  Moreover, *Chappell* appears to limit an in-kind exemption in any event to that exemption's maximum dollar amount if post-petition appreciation is involved.

1.   Background

The actual dispute in *Chappell* was between the Chapter 7 trustee and the debtors as to who between them was entitled to the post-petition appreciation attributable to the debtors' home.  The Chappells had identified their home as a Section 522(d)(1) exemption in their Schedule C.  That schedule also set the claimed exemption's value at $21,511.25, which was exactly the difference between the $350,000 overall value the Chappells had given their home and the $328,488.75 they had disclosed as encumbrances against the same.

The trustee did not object to the exemption claimed  Indeed, he subsequently stipulated that the home's value at the outset of the case was in fact only $350,000, just as the Chappells' schedules had indicated.  However, the trustee maintained two years later that the estate was still entitled to most of what turned out to be a considerable post-petition increase in the home's value on the theory that the Chappells had only exempted the $21,511.25 they had claimed under Section 522(d)(1).

---

[31]373 B.R. 73 (9th Cir  BAP 2007).

[32]*See also, In re Heflin*, 215 B.R. at 536 ("If a debtor intends to fully exempt a particular piece of property in its entirety, regardless of its value, then the debtor should unambiguously express this intention in his schedules.")

The Chappells, of course, contended that the trustee's failure to make a timely objection to their exemption under Rule 4003(b)[33] had removed the property from the estate at that time Therefore, it was the Chappells' position that the estate had long ago lost any claim to the post-petition appreciation that had then accrued

The bankruptcy court found in favor of the Chappells and the trustee appealed.

2.     Schedule C Itself Must Manifest The In-Kind Exemption

*Chappell*, in reversing the lower court, found that the debtors had ignored two important facts in pressing their case.  First, it observed that:

> [N]othing in the debtors' Schedule C demonstrates an intent to claim an "aggregate" or entire interest.   The value of their claimed exemption is stated simply as "$21,511.25," the arithmetic difference between the value of the residence and the consensual liens.

373 B.R. at 77.

And second, it noted that:

> [D]ebtors ignore the dollar limit imposed by § 522(d)(1)   As the trustee concedes, the maximum exemption available under § 522(d)(1) is $36,900 (plus any available "wild card" amount under § 522(d)(5)).  Hence, the debtor's exemption claim did not exceed the maximum amount available to them.

*Id.* at 77-78 (footnotes omitted).

These ignored facts, *Chappell* concluded, negated whatever argument the debtors had that the home had been removed from the estate through the exemption process.  *Chappell* did, though, by negative implication acknowledge that the debtors could have removed their home as an exempt asset (*i.e.*, in-kind) at the outset of their case had they properly manifested an intention to do so.

---

[33]FED R BANKR P 4003(b).  Unless otherwise designated, all further references to "Rule _____" shall be to the Federal Rules of Bankruptcy Procedure.  FED R BANKR P 1001, *et seq*

20

> There is no issue as to the debtors' entitlement to the claimed
> residence exemption amount of $21,511.25, since it is undisputed that
> the Appellant trustee did not object to the debtors' claimed
> exemptions. Moreover, the trustee concedes that they jointly were
> entitled up to $36,900 (plus any available wild card amount). **To the
> extent the debtors claim an exemption in a greater amount, they
> did not provide sufficient notice of such claim to the trustee and
> creditors**

*Id.* at 83 (emphasis added).[34]

Indeed, *Chappell* distinguished *Taylor v. Freeland & Kronz* and the similar case of *Allen v. Green*

*(In re Green)*, 31 F.3d 1098 (11th Cir. 1994), on the basis that in those instances the debtors had

properly expressed their intention to remove the entire asset. *Id.* at 78.[35]

---

[34]*See, also, Barroso-Herrans,* 524 F.3d 341   In that case, the debtor contended that he had exempted in-kind two lawsuits related to his defunct business when the Chapter 7 trustee later settled them for much more than the $4,000 value the debtor had given each of them in his Schedule C   However, the bankruptcy court rejected his contention as did the First Circuit on appeal

The First Circuit concluded that the question of whether an exemption claimed may be taken in-kind or not must ultimately turn on how a trustee would objectively interpret the debtor's intentions. It noted that the inclusion of terms like "'100% [of the property's value],' 'unknown,' 'to be determined,' 'tba' and '$1.00'" in a debtor's Schedule C are "red flags" to trustees and creditors. *Id* at 345 (quoting from 1 *Collier on Bankruptcy,* ¶ 8 06(1)(c)(ii) (15th ed rev 2007))   However, in its view, equating the exemption claimed with its value was not enough to put the trustee reasonably on notice, at least under the circumstances presented. As the First Circuit observed

> [A] $4,000 valuation for the entire multi-million dollar law suit including
> the accounts receivable makes no sense; and nothing in the schedules
> suggests that the $4,000 figures reflected an enormous and improbable
> discount based on the risk that the suits would be lost.

*Id* at 346.

[35]Specifically, *Chappell* concluded that the debtor in *Taylor* had sufficiently expressed an intent to claim the entire proceeds of an employment discrimination action by listing its Schedule C value as "unknown" and that the debtor in *Green* had expressed a similar intent with respect to her personal injury claim by identifying it as "contingent" and assigning it a value of one dollar. These facts, according to *Chappell*, distinguished *Taylor* and *Green*

There is no question that these distinctions exist. *See, also, Barroso-Herrans,* 524 F 3d at 345   Moreover, listing an exempted claim on Schedule C as "contingent" or setting its value as "unknown" may be more probative of the debtor's intent to claim it in-kind than listing or valuing it in some other manner. However, *Chappell* offers no explanation as to why these distinctions warrant an all or nothing approach.

> Thus, both *Taylor* and *Green* are factually distinguishable in that in each instance the debtors expressed an intent to claim the entire proceeds of an asset in an undetermined and unspecified amount as exempt. In the present case before this Panel, the debtors exempted a specific amount, $21,511.25, under a colorable basis, and gave no indication of an intent to claim any more than that specific amount.

*Id.* at 78.

This court agrees with *Chappell* that a debtor may not take an in-kind exemption from the bankruptcy estate unless the debtor in fact intended the same. For example, had the Ericksons not desired to keep the Tawas property for themselves, but rather had wanted Trustee to sell it and account to them for only their share of the proceeds, then the outcome of this case would be much different. This court, though, disagrees with *Chappell*'s unwarranted restriction of how that intent is to be determined.

---

In other words, why should the peculiar facts of *Taylor* and *Green* be conclusive as to the debtor's intention to take an in-kind exemption but the peculiar facts of *Chappell* be given no weight at all? Does not the fact that the debtors in *Chappell* gave identical values to the estate's equity in their home and the Section 522(d)(1) exemption they were claiming permit at least the inference that they too intended to exempt the property in-kind, especially in light of the fact that the trustee in that instance actually agreed with the *Chappell* debtors that there was no more equity in the home at that time beyond what they were claiming as their exemption?

This court concludes, then, that the distinctions *Chappell* draws are irrelevant and that it is better to simply accept that the question put in all cases is one that can only be decided by considering all the relevant evidence at hand. Indeed, even the court in *Barroso-Herrans* did not reject outright the debtors' argument in that case that their equation of the values and the exemptions claimed in the two lawsuits manifested an intention to exempt them in-kind from the estate. Rather, the First Circuit rejected that contention only after it concluded that other factors particular to the case required a different conclusion. *Id* at 346

Nor does *Cormier*'s characterization of the value information in Schedule C as only an "administrative convenience." *Cormier*, 382 B R at 395, alter the probative effect of that information. Whatever its purpose, the fact remains that this so-called "bonus information," *Id.*, offers insight into the debtor's intent. As such, it is as pertinent to the inquiry as any other item of information that appears in that schedule or, for that matter, that arises from any other source

22

*Chappell* dismisses as elementary the Supreme Court's own observations about the principles underlying the exemption process.[36]   Nonetheless, those principles are worth discussing   First, as *Chappell* agrees, a debtor may take in-kind exemptions from the bankruptcy estate so long as its value does not exceed any statutory limit.   Second, as *Chappell* also agrees, the in-kind removal of an exempted asset is accomplished through Section 522(*l*).   And finally, as *Chappell* further agrees, the in-kind removal of the exempted asset from the estate will be complete if no timely objection is made.

How, though, does the debtor go about claiming the in-kind exemption as intended?   The principles here are equally elementary.   Section 522(*l*) states that the debtor must file a list   Rule 4003(a) in turn identifies that list as being among the schedules the debtor is to file pursuant to Rule 1007 [37]   And Rule 1007(b)(1) provides that the requisite list be prepared "as prescribed by the appropriate Official Forms."

Now apply these principles to the instant case.   The Ericksons clearly intended at the outset of their case to remove the Tawas property as an in-kind exemption, for that is what Mr. Erickson himself testified at the hearing without contradiction   Moreover, the Ericksons did exactly what was asked of them by the Bankruptcy Code and the attendant rules to accomplish that removal – to wit, they identified the Tawas property in the Schedule C they prepared and then provided all of the information about it that that form required.   Nor is there even a hint that the Ericksons intended to

---

[36]     In explaining elementary bankruptcy principles, the Court [in *Owen v. Owen*] stated in dicta that an "exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor "

*Chappell,* at 79.

[37]*See, also,* 11 U S C  § 521(a)(1)(B)(i)

mislead Trustee as to their intentions. To the contrary, their valuation of the interest at the same amount as the Section 522(d)(5) exemption claimed not only is consistent with what they intended but also consistent with how Trustee interpreted what they had disclosed.

Yet *Chappell* would still conclude that the Ericksons' attempt to exempt the Tawas property had failed because the Schedule C they had completed did not manifest the requisite intent to remove that vacant land. But therein lies the difficulty, for the Ericksons had done everything the law required of them to take the exemption claimed. Not only, then, does *Chappell* reject as inadequate the exemption process that Congress itself devised but it also presumes to correct that inadequacy with a rule of its own. This court certainly shares *Chappell*'s concern over the shortcomings of Schedule C's format. However, such concern does not justify *Chappell* taking the initiative that it did.

This court also disagrees with *Chappell*'s declaration that "[a]ny ambiguity in the schedules is to be construed against the debtor." *Id.* at 77. As support, *Chappell* cites only a footnote in a Ninth Circuit case.

> Unless there is a timely objection from a party in interest, any property claimed as exempt by a debtor-regardless of whether the claimed exemption is valid-is automatically exempt under section 522(*l*). *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) Because the time to object is relatively short, *see* Bankr.Rule 4003(b), it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules. **Given that the debtor controls the schedules, we construe any ambiguity therein against him.**

*In re Hyman*, 967 F 2d 1316, 1319 n. 6 (9th Cir 1992) (emphasis added).[38]

---

[38]*See also, Cormier*, 382 B.R. at 397 ("Should not the debtor bear the burden to clarify the ambiguity that he created?") and *Barroso-Herrans*, 524 F.3d at 345 ("[A]fter *Taylor*, a failure to object to a claimed

24

But is this a good rule under this circumstance? A debtor "controls" the schedules only in the sense that he has control over the accuracy of the information he provides. Accuracy, though, is not the issue here nor was it the issue in *Chappell*. Trustee has never challenged the Ericksons' valuation of the Tawas property nor did the *Chappell* trustee question those debtors' valuation of their home. Indeed, the *Chappell* trustee stipulated that the value that the debtors gave in their Schedule C was accurate.

What is the problem in these cases is the form itself, for an ambiguity is created whenever the debtor lists the value of the subject property and the exemption claimed as the same In other words, does the debtor, when equating these values, intend to exempt the property in-kind, or instead, does the debtor intend to claim as his own no more of the property than the specific amount stated? If anything, the presumption should be that the exemption claimed was intended to be in-kind, for it is safe to say that most debtors, when they schedule an exemption in this fashion, have in mind keeping the asset itself as opposed to taking whatever is claimed from the proceeds realized from its sale. But, be that as it may, debtors like the Ericksons and the Chappells should have at the very least the opportunity to offer evidence beyond the form itself to clear up what, after all, is an ambiguity that the form itself creates.[39]

---

exemption has very harsh consequences for the estate, and so it is most fair to place on the debtor the burden of claiming exemptions unambiguously.").

[39]*Cormier* is not as stringent as *Chappell* in the application of this rule, for the case law *Cormier* has cited requires the court to at least attempt to resolve the ambiguity through extrinsic evidence before subjecting the drafter to the rule's adverse presumption *Id* at 397 n. 30 (citing *NILAC Int'l Mktg Group v Ameritech Serv., Inc*, 362 F.3d 354, 359 (6th Cir. 2004) and *Klapp v. United Ins Group Agency, Inc.*, 468 Mich. 459, 471 (2003)) As for *Burroso-Herrans*, the court there ultimately did not rely upon this rule of construction, but instead relied upon what the trustee could have reasonably ascertained about the debtors' intentions from the available facts 524 F 3d at 346 ("It is enough to resolve this case that the trustee's reading of the exemptions as limited to a $4,000 share of the proceeds from each law suit is objectively reasonable . . ")

Of course, the Bankruptcy Code did not require *Chappell* to construe those debtors' Schedule C as it did. Rather, the presumption *Chappell* relied upon was only the product of its own circuit's declaration. Therefore, this court is not bound by *Hyman*'s interpretative constraint, but rather is free to also consider other relevant evidence, such as Mr Erickson's own testimony, concerning whether an in-kind exemption of the Tawas property was intended or not.

3.    Post-Petition Appreciation

Curiously, *Chappell* goes on to state that:

> Debtors' approach is also impermissible under controlling Ninth Circuit authorities. Ninth Circuit precedent requires postpetition appreciation in property of the estate to inure to the benefit of the estate.

373 B R at 79.

This court does not dispute the general validity of this conclusion. If, for example, the Tawas property in this instance had not been claimed as exempt and if it had appreciated from $12,500 to $20,000 before Trustee liquidated it, then certainly the estate and its creditors should benefit from that appreciation. *Cf.* 11 U.S.C. § 541(a)(6).[40]

---

[40]*Chappell* relies upon Section 541(a)(6) as well to justify the estate's inclusion of post-petition appreciation as its property

> Notwithstanding that *Reed*, *Hyman* and *Alsberg* were decided by the Ninth Circuit in the context of California homestead exemption law, as we noted in *Vu*, the estate's entitlement to postpetition appreciation is not premised upon the applicable exemption scheme. Rather, it is based upon § 541(a)(6)

373 B.R. at 81 (citing *Vu v. Kendall (In re Vu)*, 245 B R 644, 647-48 (9th Cir. BAP 2000)).

But *Chappell* misreads *Vu*. *Vu* does address the estate's interest in post-petition appreciation of a debtor's home However, it did not do so in the context of whether that appreciation would prohibit the debtor from claiming an in-kind exemption of his home through Section 522(d)(1) and Section 522(l); rather, *Vu* involved the entirely different question of whether the debtor could compel a Section 554(b) abandonment of

26

Why *Chappell*'s conclusion is curious is that the panel itself recognized that the debtors in that instance could have successfully taken an in-kind exemption of their home had they only manifested that intention properly in their schedules. But if that is so, then shouldn't those debtors have been able to also keep all of the post-petition appreciation that had then accrued? After all, the *Chappell* trustee had agreed that the home's equity at the outset of the case was no more than the Section 522(d)(1) exemption claimed. The panel, though, seems to have concluded that Section 522(*l*) would not have removed the exempted home from the estate even under that scenario, since the panel clearly determined that under no circumstance should a debtor be entitled to post-petition appreciation associated with his home (other than the $20,200 maximum permitted under Section 522(d)(1)) unless the debtor had secured an abandonment beforehand. *Chappell*, 373 B.R. at 75.

How *Chappell* arrived at such a contradictory result can be understood from the logic it employed. Here in fact is the issue that the panel itself believed was presented to it on appeal:

> We address whether postpetition appreciation of exempt property is
> to be treated the same under the federal exemption scheme as under
> a state's exemption scheme.

373 B.R. at 75.

The panel then resolved the issue posed with a syllogism that can be summarized as follows:

> 1) The Ninth Circuit does not allow bankrupt debtors who have
> claimed California's homestead exemption to keep any post-petition

---

appreciated property that all of the parties, including debtors, were treating as still being part of the bankruptcy estate. Indeed, all that the Ninth Circuit BAP decided in *Vu* was that the bankruptcy court had not abused its discretion in denying the debtors' motion to abandon because the debtors had failed to establish by a preponderance of the evidence that the subject property was burdensome or of inconsequential value and benefit to the estate *Vu*, 245 B R at 650.

27

appreciation that exceeds the maximum amount permitted under that exemption,[41]

2) The Supreme Court in *Owen v. Owen*[42] has held that there must be parity between the state and federal exemption schemes offered bankrupt debtors;

3) Therefore, bankrupt debtors who claim a Section 522(d)(1) exemption in their home under the federal scheme should likewise not be able to keep any post-petition appreciation that exceeds the maximum amount permitted under that subsection.

*Chappell*, 373 B.R. at 75 and 79.[43]

However, *Chappell*'s second premise is overstated. Here is how *Chappell* itself expressed

that premise.

---

[41]The Ninth Circuit authority *Chappell* cites is a series of cases that include *Hyman v. Plotkin (In re Hyman)*, 967 F 2d 1316 (9th Cir 1992), *Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312 (9th Cir 1995), and *Schwaber v Reed (In re Reed)*, 940 F 2d 1317 (9th Cir. 1991) However, as *Chappell* itself acknowledges, all three of these cases were decided only "in the context of California homestead law," 373 B R at 81, while the debtors before it had claimed the exemption of their home under the federal exemption permitted by Section 522(d)(1).

[42]500 U.S 305, 111 S Ct. 1833 (1991).

[43]This is how the *Chappell* BAP itself posed the syllogism·

> We address whether postpetition appreciation of exempt property is to be treated the same under the federal exemption scheme as under a state's exemption scheme. We conclude that controlling Ninth Circuit authority involving state homestead exemptions, which holds that the bankruptcy estate is entitled to postpetition appreciation in excess of the maximum value permitted to be exempted under the statutory authority invoked by the debtor, applies with equal force to exemptions taken under the federal exemption scheme The factual differences between existing Ninth Circuit authority regarding state exemptions and the federal exemption now in question constitute a distinction without significant difference as to postpetition appreciation. We thus also conclude that a debtor's entitlement to postpetition appreciation is limited to the maximum value of the exemption permitted under the exemption statute invoked.

373 B.R. at 75.

> In view of the United States Supreme Court's [*i e. Owens's*] **accordance of equivalence of treatment to federal and state exemptions**, we disagree with the debtors' contention that by claiming a federal residence exemption they were entitled to an "aggregate" interest in the entirety of their residence.

*Id.* at 79 (emphasis added).

But *Owen* does not stand for such a broad proposition, as *Chappell* also acknowledged in the immediately preceding paragraph

> Of particular importance here is the Court's acknowledgment in *Owen* that, **at least for purposes of impairment of exemptions**, federal and state exemptions are to be given equivalent treatment.

*Id.* (emphasis added).

In fact, earlier in its opinion the *Chappell* BAP had actually used the narrowness of *Owens'* ruling to dismiss the debtors' own reliance upon that case.

> Relying on *Owen*, a 1991 United States Supreme Court case which preceded *Taylor*, the debtors posit that the effect of exempting property from the estate is to withdraw that property from the estate and administration by the bankruptcy trustee  *Owen*, however, is not helpful to the debtors' position. **The United States Supreme Court in that case addressed a rather narrow issue of judicial lien avoidance, specifically whether a judicial lien could be avoided when the state (in that case, Florida) defined the exempt property so as specifically to exclude the property encumbered by the judicial lien.**

*Id* at 78-79 (emphasis added).

Put simply, *Owen* holds only that enforcement of Section 522(f)'s avoidance powers is to be the same under either exemption scheme provided by the Bankruptcy Code.  What *Owen* does not say, or even suggest, is what *Chappell* requires in order for its syllogism to be true – that there is to

29

be an overall equivalency between the federal and state exemption schemes permitted by Sections

522(b)(2) and (3).[44]

---

[44]*Cormier* apparently agrees with the expansive interpretation of *Owen* that *Chappell* relies upon to form the second premise of its syllogism   "This court believes that the *Owen* Supreme Court language discussing § 522(f) is equally compelling when § 522(d) is interpreted." *Cormier*, 382 B R at 407. However, *Cormier* offers no more explanation for this belief than does *Chappell*. Consequently, a closer look at *Owen* is warranted.

The creditor in *Owen* had recorded a judgment lien against the debtor in Sarasota County, Florida. That lien had attached to a condominium the debtor owned in that county because Florida at that time did not recognize the debtor's condominium as immune under its then-enacted homestead exemption. However, Florida thereafter amended that exemption such that the debtor's condominium would now be eligible. Unfortunately for debtor, Florida did not make the amendment retroactive and, therefore, the creditor's previously recorded judgment lien continued to attach

The debtor then attempted to set aside the judgment lien under Section 522(f) in conjunction with his ensuing bankruptcy case. That subsection permits the avoidance of a judgment lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled under [Section 522(b)] . .   " 500 U S. at 305, 111 S Ct at 1834. The creditor, of course, opposed avoidance on the theory that its lien was valid under Florida's homestead law, even as amended, and, therefore, no exemption was being impaired. Indeed, the creditor maintained that avoidance would actually expand the debtor's exemption under Florida law as opposed to preserving any exemption that Florida in fact recognized

Nonetheless, the Court permitted the lien to be avoided, although it certainly recognized the appeal of the creditor's argument   What persuaded the Court was how the courts had "widely *and uniformly* rejected" the same argument when it had previously been made in the context of the "built-in limitations on the *federal* exemptions " 500 U S at 310, 111 S.Ct. at 1836 (emphasis in original). In other words, the Court saw a similarity between the limitation in the Florida homestead exemption (*i.e* , that the exemption did not encompass judgment liens that had attached prior to its enactment) and the monetary limitations imposed upon the interests claimed as exempt under many of the Section 522(d) subsections  The Court then offered a number of reasons why Section 522(f) would have had to have been construed contrary to how the creditor wanted it interpreted had the subject exemption been one of the "limited" federal exemptions under Section 522(d)  In doing so, the Court asked itself "whether a different interpretation [of Section 522(f)] should be adopted for state exemptions." 500 U S at 313, 111 S.Ct at 1838. It answered its question as follows.

> We do not see how that could be possible.  Nothing in the text of § 522(f)
> remotely justifies treating the two categories of exemptions differently.

*Id*

Lest there be any doubt that the Court was confining its equation of the state and federal exemption schemes to only the Section 522(f) issue presented, it stated this as its conclusion:

> On the basis of the analysis we have set forth above with respect to federal
> exemptions, **and in light of the equivalency of treatment accorded to**
> **federal and state exemptions by § 522(f),** we conclude that Florida's
> exclusion of certain liens from the scope of its homestead protection does

Indeed. it is difficult to reconcile *Chappell*'s expansive interpretation of *Owen* with the Supreme Court's own admonition in so many other cases that statutes are to be construed based upon their plain meaning. *Lamie v. U.S Trustee.* 540 U.S 526, 124 S.Ct. 1023 (2004). Consider again the bankruptcy principle in *Owen* that *Chappell* acknowledged earlier as so elementary:

> "[A]n 'exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'"

*Chappell*, 373 B.R. at 79 (quoting *Owen*, 500 U.S. at 308, 111 S.Ct. at 1833).

There is no question that the residents of California have available to them a set of exemptions that they may use to accomplish their fresh start under Section 522. It is equally true that *Hyman* and the other Ninth Circuit cases that *Chappell* cites were required to look at the language that the California legislature chose in enacting those exemptions to determine what could or could not be removed from the bankruptcy estate should a Californian avail himself of the state exemption scheme permitted by Section 522(b)(3).

However, the so-called federal exemptions permitted under Section 522(b)(2) have nothing to do with whatever California itself has chosen as appropriate exemptions  Rather, the federal scheme set forth in Section 522(d) is solely the product of Congress' own creativity. Should not, then, the exemptions created under Section 522(d) be dictated by the express language that Congress

---

not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

*Owen*, 500 U.S. at 313-14, 111 S Ct. at 1838 (emphasis added).

It is difficult, then, to understand how either *Chappell* or *Cormier* can transform the "equivalency" referenced in this conclusion, as it is so limited. to provide support for the much broader proposition that *Chappell* found crucial to the syllogism it was making.

31

chose for that subsection rather than by how the Ninth Circuit has interpreted an entirely different set of exemptions enacted only by a single state's legislature?[45]

*Chappell* does attempt to bolster its own reasoning by relying on what it characterizes as two other persuasive cases: *In re Heflin*, 215 B.R. 530 (Bankr. W.D. Mich. 1997) and *In re Bregni*, 215 B.R. 850 (Bankr. E.D. Mich. 1997). However, even here *Chappell*'s logic seems weak. Granted, *Heflin* and *Bregni* also hold that the bankruptcy estate was entitled to an asset's post-petition appreciation even though the debtor had previously claimed it as exempt. But, as *Chappell* also acknowledges, *Heflin* and *Bregni* had depended just as much upon the Ninth Circuit's "*Hyman* line of cases" as it had.[46] Consequently, *Chappell*'s reliance upon these two cases appears circular. In other words, how could *Heflin* and *Bregni* have persuaded *Chappell* that these Ninth Circuit cases are correct if *Heflin* and *Bregni* themselves relied upon these very same cases as their support? Indeed, the fact that *Heflin* and *Bregni* addressed exemptions taken under Section 522(d)(1) with at

---

[45]*Chappell* fears that any interpretation of Section 522(d) other than the one it has adopted "would stand the bankruptcy system on its head." 373 B.R. at 79. Why, it wonders would debtors "ever choose their state's exemption scheme, limited as it likely would be to a specific dollar cap" . . "[i]f the federal residence exemption of § 522(d)(1) were construed to exempt the entirety of the residence[.]"? *Id.*

However, *Chappell*'s concerns are already addressed by Section 522(b)(2). That section, of course, permits every state the right to "opt out" of the federal exemption scheme permitted under Section 522(d). Therefore, if a state such as Washington (the Chappells' state) should ever decide that its bankrupt residents are unduly preferring the federal exemptions over its own, then that state's legislature need only opt out of Section 522(d) to remedy the problem. *See, Owen*, 500 U S. at 308, 111 S Ct at 1835.

[46]For example, in *Heflin*, the court states.

> This court adopts the reasoning set forth in the Ninth Circuit's decisions in *Hyman* and *Alsberg*  Therefore, this court holds a trustee is not legally required to object to a debtor's scheduled value relating to specific property

*Heflin*, 215 B R at 535 *See also, Bregni*, 215 B R at 854 ("This Court agrees with the reasoning of *Hyman* and *Heflin* and, therefore, finds that Bregni is limited to her $15,000 claimed exemption ").

most a passing acknowledgment to what *Chappell* itself recognized as a crucial limitation of *Hyman* and its progeny – that those cases were interpreting only California's own homestead exemption – makes the persuasiveness of *Heflin* and *Bregni* even more suspect.[47]

Therefore, for the reasons given, this court is not persuaded by *Chappell*'s other limitation on a debtor's ability to exempt property in-kind  Moreover, there has been no suggestion in this case that the value of the Tawas property has risen post-petition and, as such, this aspect of *Chappell* would appear to be inapplicable in any event.

---

[47]*Chappell* concludes with the observation that the debtors before it were "in large part the 'victims' of their own inaction." 373 B R  at 82  The debtors could have, it notes, moved for abandonment at any time during the two-year interval between the commencement of their case and the trustee's ultimate declaration that he intended to sell the property. *Id.*

However, is this fair? After all, even the trustee in that instance agreed that there was no non-exempt equity in the debtors' home at the outset of their case  Indeed, the trustee himself did not learn of the property's enhancement in value until some two years later. Therefore, to chastise those debtors for not seeking an abandonment earlier for what they legitimately had a right to believe had already been returned to them as an uncontested objection is harsh.

Moreover, *Chappell*'s suggestion that abandonment would have been an easy solution for those debtors had they only acted seems gratuitous given the Ninth Circuit BAP's prior acknowledgment of how difficult securing such an abandonment is:

> [a]n order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset . . Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered

*Vu*, 245 B R  at  647 (quoting *Morgan v. K.C. Mach. & Tool Co. (In re K C  Mach. & Tool Co.)*, 816 F 2d 238, 246 (6th Cir  1987))

Would not the prospect of appreciation alone have warranted the trustee's objection to any abandonment sought by the *Chappell* debtors even had they realized early on that filling out their Schedule C as they did was not itself enough to remove their home from the bankruptcy estate?

33

## C.   *Anderson*

Although *Chappell* distinguishes *Anderson* on the facts,[48] *Cormier* rejects it outright, criticizing in particular the reasons offered in this court's prior opinion[49] that the *Anderson* BAP then affirmed.  In *Cormier*'s words:

> The bankruptcy court in *In re Anderson*, without adequate statutory analysis, imposed a judge-invented mechanical formula to determinate [sic] what is "claimed as exempt," relying in part upon a debtor's scheduled values.  The judge-made formula goes like this: "if the value (net of liens) in Schedule C given for the property is equal or less than the value of the exemptions claimed, then the trustee must *presume* that the debtor intends the exemption claimed to be taken in-kind."  The flip side of this presumed mechanical formula is that "[i]f the value (net of liens) given for the property is greater than the value of the exemption claimed, the property remains property of the estate." *Id.*

*Cormier*, 382 B.R. at 391-92 (emphasis in original) (citations omitted).

However, *Cormier* has edited the portion of the *Anderson* bankruptcy opinion it relies upon for its conclusions.  The full text of the pertinent paragraphs is as follows:

> It is patently unfair to subject the debtor to such a process [*i.e.*, removal of exempted property through a Section 554(b) abandonment].  A debtor is under a duty to honestly prepare at the outset of the case schedules that set forth, among other things, the property of the estate he claims as exempt together with his opinion as to the value of that property  **If the value (net of liens) given for the property is greater than the value of the exemption claimed, the property remains property of the estate.**  No objection by the trustee is necessary.  The debtor, by his own admission, has acknowledged that there is value in the property that must be administered by the trustee for the benefit of creditors.

---

[48]*Chappell*, 373 B R. at 82 n 9

[49]*In re Anderson*, 357 B.R 452 (Bankr W D. Mich 2006).

34

> On the other hand, **if the value (net of liens) in Schedule C given for the property is equal or less than the value of the exemptions claimed, then the trustee must presume that the debtor intends the exemption claimed to be taken in-kind.** If a trustee believes that the debtor has understated the value of the property for purposes of claiming his exemption, then it is incumbent upon the trustee to file an objection or ask for an extension of time so that he can further investigate its value. At the very least, the trustee should confirm with the debtor that the debtor does not intend to keep the described property as an in-kind exemption but instead intends to accept its cash equivalent after the trustee has disposed of the same. The trustee cannot, as *Heflin, Bregni,* and *Einkorn* would have it, simply sit back and wait for the debtor to finally force the issue through the abandonment process.

*Anderson,* 357 B.R. at 471-72 (emphasis added).

What this court speaks of in *Anderson,* then, is not formulas, but presumptions. Moreover, the presumptions it imposes, if "imposes" is even the correct word, are directed at how the estate is to be administered, or, more specifically, how the trustee himself is to address with due deliberation the exemptions that a debtor wishes to recover from the bankruptcy estate as his own. Put differently, Section 522(*l*) and Rule 4003(b) already establish the framework within which the trustee must administer claimed exemptions and it is that framework, coupled with the Supreme Court's own observations in *Taylor v. Freeland & Kronz,*[50] that obligates the trustee to act promptly if an objection is to be made. All that *Anderson* does is elaborate upon the consequences of delay if an exemption is sought in-kind.

Of course, the problem in this instance, as it was in *Cormier, Chappell* and *Anderson,* is that the official form used for claiming exemptions (*i.e.,* Schedule C) does not adequately manifest a debtor's intention to exempt property in-kind even when it is properly completed. That form should

---

[50]503 U.S. 638, 112 S.Ct. 644 (1992)

be corrected to include a column which, if checked, would unequivocally establish the debtor's desire to actually reclaim the designated property as his own. However, until that correction is made, common sense alone suggests that courts should address the ambiguities that will inevitably continue with the current form's use by examining all of the relevant evidence there may be as to the debtor's intent as opposed to limiting consideration to only that which is within the four corners of the form itself.

This court's approach in *Anderson* is based upon such common sense. Therefore, it is difficult to understand how it can be characterized as mechanical or formulaic, especially when compared to what *Chappell* and *Cormier* espouse as alternatives. Again, *Chappell* substitutes full inquiry of the facts for a rigid construction of a form over which debtors have no control. As for *Cormier*, the debtors there claimed over $13,000 in Section 522(d)(5) for corporate stock that they valued at only $1.00. Yet it does not appear that there was any factual inquiry in that case as to why those debtors claimed their exemption in this unusual fashion.[51] Rather, *Cormier* opted for a narrow interpretation of Section 522(d)(5) and similar subsections that has left no room for in-kind exemptions at all.[52]

---

[51]Although Mr. Cormier did testify, the court in *Cormier* apparently postponed considering whatever he had to say until some later hearing. *Cormier*, 382 B.R. at 384 n. 12. Moreover, it is not altogether clear that Mr. Cormier's testimony even covered his wife's and his intentions in exempting the stock as they did since *Cormier* itself suggests that the evidentiary hearing's purpose was only to address "what happened, or did not happen, at the auction sale" that Mr. Cormier was also challenging. *Id.* at 384.

[52]This court recognizes that *Cormier* criticized it for not itself conducting an evidentiary hearing in *Anderson*. However, the issue of whether an in-kind exemption had been taken or not in that instance arose in the rather unusual circumstance of whether a settlement the trustee was proposing with respect to the sale of an exempted hunting cabin should be approved under Rule 9019(a). As a consequence, no evidentiary hearing was needed nor was one even requested. Rather, this court was able in *Anderson* to consider the merits of the trustee's Rule 9019(a) motion simply upon the inferences that could be drawn from the limited record before it. See, *Anderson*, 357 B.R. at 427, n. 22. Coincidently, the inference that this court drew - that the debtors had intended their exemption of the hunting cabin to be in-kind - is exactly the same

36

This court does agree, though, with *Cormier* on one important point - that the *Anderson* BAP decision is incorrect to the extent that it stands for the proposition that a debtor's valuing of the asset in the same amount as the exemption claimed in his Schedule C is conclusive. This is what the *Anderson* BAP said:

> [W]e are persuaded generally that a debtor's listing of an exemption in an amount sufficient to exempt all of the available (*i.e.*, unencumbered) value in the property indicates his or her intent to exempt the property in full.

*Anderson* BAP, 377 B.R. at 876 (citing *Allen v. Green (In re Green)*, 31 F.3d 1098, 1100 (11th Cir. 1994).[53]

---

inference the *Chappell* BAP drew when it distinguished *Anderson* from the case before it. *Chappell*, 373 B.R. at 82, n. 9.

[53]*Cormier* takes considerable issue with the *Anderson* BAP's reliance upon *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir. 1994) as justification for its position. *Green*, of course, is the case that *Chappell* also distinguished in reaching its conclusion. *Cormier* argues that the *Anderson* BAP should not have discounted *Stoebner v. Wick (In re Wick)*, 276 F.3d 412 (8th Cir 2002). *Cormier* is right.

*Wick* involved the debtor's attempted exemption of certain stock options under Section 522(d)(5). The debtor had valued both the options and their claimed exemption as "unknown" in her Schedule C and the Rule 4003(b) deadline passed without objection. However, a dispute nonetheless arose as to whether the debtor had exempted all of the stock when it was later sold for substantially more than the remaining $3,925 the debtor had available as her Section 522(d)(5) exemption.

The Eighth Circuit affirmed the bankruptcy court's determination that the debtor had only partially exempted the stock. Of particular import was the Eighth Circuit's own reliance on the trial record to support its affirmance.

> We believe the Bankruptcy Court correctly determined that the options were partially exempted. The facts suggest that Ms. Wick, her counsel, and the trustee understood that the options were only partially exempt. The trustee requested a copy of the employment agreement and followed up on whether Ms. Wick's options had vested. These actions were logical only if he believed the estate had an ongoing interest in the options. Then, the trustee took Ms. Wick's assurance that her options were denied at face value. In her response to the trustee, Ms. Wick did not question the trustee's follow-up on the options, which suggests that she too understood that the options were only partially exempt. Further, Ms. Wick's counsel acknowledged in a July 22, 1999, letter to the trustee that the estate had at least some, if a minimal, interest in the options. *In re Wick*, 249 B.R. at 907

37

Granted, one is hard-pressed to conclude that an "in-kind" exemption is not intended when, as was the case here, the Ericksons valued both their interest in the Tawas property and their Section 522(d)(5) exemption at $12,500 and the exemption claimed was well within the maximum allowed under Section 522(d)(5). Nonetheless, the Ericksons were certainly entitled to offer testimony and other extrinsic evidence to the contrary if in fact they intended something else.[54]

### D.   *Taylor v. Freeland & Kronz*

It is fair to say that there would be no controversy today had *Taylor* been decided differently. *Taylor*, though, is quite clear. Its interpretation of Rule 4003(b) unambiguously establishes when the trustee must object if property claimed as exempt is to remain with the estate. Nor is *Taylor* decided narrowly. The Court clearly took into consideration the fear that the bright line it was drawing would leave bankruptcy estates and their constituent creditors vulnerable to trustee mistake and debtor fraud. Unfortunately for trustees, the Court concluded that the rule did not permit exceptions for those concerns. *Taylor*, 112 S.Ct. at 1648-49.

---

("[I]t is our position ... that we have claimed the majority of [the options] as exempt.")

276 F 3d 416

*Wick*, then, does reject the *Anderson* BAP's conclusion that a debtor's equation of the exemption claimed and the asset's value in his Schedule C manifests an irrebuttable presumption that the asset is to be exempted in-kind. But *Wick* does not, as *Chappell* and *Cormier* would have it, require the opposite presumption either. Rather, *Wick* is quite clear that Schedule C is only probative of the debtor's intention, and, as such, it is appropriate to look elsewhere for other evidence of the debtor's intent, especially when the information within Schedule C is itself ambiguous.

[54]Changing the facts helps illustrate this point  For example, had the property instead been the Ericksons' home, their abandonment of it prior to the commencement of the case would have certainly been probative of their intention to leave it as part of the estate notwithstanding the fact that they may have set the home's value and the exemption claimed as the same in their Schedule C.

38

This court offers no opinion whether *Taylor*'s interpretation of Rule 4003(b) is correct or not. What matters now is that the Court has spoken  If additional protection is needed to ensure against trustee mistake or debtor fraud, then those protections should be afforded through amendments to the rules.[55]  Indeed, one such correction has already been made, for Rule 4003(b) was recently amended to allow a trustee additional time to object if the debtor had fraudulently claimed the exemption.  However, until a correction is also made to the official form used for Schedule C, the courts must abide by *Taylor* and focus instead upon ascertaining the debtor's intent through factual inquiry whenever the debtor's Schedule C itself is ambiguous as to what that intent might have been.[56]

---

[55]*See*, 28 U S.C. § 2075

[56]*Barroso-Herrans* well illustrates why the needed corrections should be accomplished through the rules as opposed to through the courts.  Again, the debtors in that case had claimed as exempt in-kind two lawsuits that they had valued at $4,000 each.  However, it is apparent that both the bankruptcy court and the First Circuit had their doubts  As the First Circuit observed

> A problem with such a reading is that the $4,000 sum appears to be an implausible full valuation for law suits seeking to collect a vastly greater amount–over $4 *million*–from a government authority for unpaid invoices  Barroso explains away that discrepancy as a function of expected value, at the time of filing, he says, the suits were contingent assets worth only $4,000 apiece  This is a dubious assertion on its face, and even without Barroso's cooperation the suits were settled for $100,000.

*Barroso-Herrans*. 524 F.3d at 344 (emphasis in original)

Indeed, the bankruptcy court in *Barroso-Herrans* actually found that the debtors had acted in bad faith  *Id.* at n. 1.

It is equally evident that the First Circuit struggled with how to remedy the debtors' apparent fraud  Its solution, of course, was to ignore what the debtors clearly intended, as deceitful as it may have been, and to focus instead upon what the trustee could have reasonably perceived.  Solving the problem as it did no doubt accomplished the justice sorely needed in that particular case.  Unfortunately, it was at the expense of future debtors who, like the Ericksons here, will not have been fortunate enough to have included in their Schedule Cs one or more of the "red flags" alluded to by the First Circuit but who nonetheless will have completed that schedule in good faith and with the honest intention of exempting the targeted asset in-kind

How much easier and clearer it would have been for the First Circuit, or better, the underlying

## CONCLUSION[57]

For the reasons stated herein, the court sustains Trustee's objection to the Ericksons' claimed $13,810 Section 522(d)(5) exemption of their 2006 and 2007 tax refunds. This court further calculates that the maximum Section 522(d)(5) exemption that the Ericksons may claim in these refunds is $9,113.[58] However, both parties reserve the right to challenge that calculation.

---

bankruptcy court, had the current exception for fraud been added earlier to Rule 4003(b). Or, in the alternative, how much easier would it have been had the rules at that time required the debtors in *Barroso-Herrans* to specifically indicate in their Schedule C whether they intended to claim the two lawsuits as in-kind exemptions or not

[57]After the close of proofs the Ericksons argued for the first time that the Tawas property had not been removed from the estate because the time within which Trustee could have objected to its exemption had not yet passed  The Ericksons based this new argument upon the fact that Trustee did not report to the court that the first meeting of creditors had been held until April 25, 2008. The Ericksons contend that if that date is treated as the date the first meeting of creditors concluded, then the Tawas property would not have been removed from the estate by operation of Section 522(*l*) and Rule 4003(b) until May 25, 2008 (*i e*, thirty days from the date the first meeting of creditors concluded)  Of course, a May 25, 2008 deadline works to the Ericksons' favor because the Ericksons amended their Schedule C to eliminate their in-kind exemption of the Tawas property on May 16, 2008.

Neither party addressed this issue as part of its proofs because of the Ericksons' failure to raise it earlier  Therefore, the pertinent record consists of only Mr. Erickson's testimony that they did in fact attend the January 15, 2008 meeting with Trustee as scheduled (*See*, Dkt. No. 2) and whatever else the court may recognize as admissible from the court's own records. *See*, *e.g.*, Federal Rules of Evidence 201.

The docket does show an entry on April 25, 2008 titled "Trustee's Report of First Meeting Held" However, there is no report actually "linked" to that electronic entry nor anything else in the record that offers any explanation as to what that entry is to mean. Similarly, there is nothing else in the court's docketed file that indicates that Trustee either orally adjourned the January 15, 2008 meeting before completing the Ericksons' examination on that day or that he thereafter adjourned that meeting in writing. *Cf.* FED.R.BANKR.P 2003(e)

Therefore, this court cannot, as the Ericksons would like, infer from the April 25, 2008 entry alone that the meeting of creditors that Mr. Erickson himself testified took place on January 15, 2008 was not actually concluded on that date but rather was adjourned to some later date in April. Consequently, the court is left with the only inference that can be legitimately drawn from the limited record it has, that being that the Ericksons' first meeting was both held and concluded on January 15, 2008

[58]*See*, n. 10, *supra*

The court will enter a separate order consistent with this opinion.

5/20/09

Honorable Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this ___20th___ day of May, 2009
at Grand Rapids, Michigan.

41